CORNELIA W. ADAIR et al., Appellants and Respondents, *v.* MARTIN BRIMMER, Individually and as Executor, etc., Appellant and Respondent.

Where, upon appeal from a surrogate's decree settling the accounts of executors, the account is not re-opened, but is sent back to be readjusted as to certain items, the decree is conclusive as to all of the questions passed upon, and not so referred back for re-examination or correction, and they may not be litigated upon the second hearing.

Upon settlement of the accounts of the executors of the will of W. it appeared that C., one of the executors, who was entitled to one-sixth of the estate, had received and appropriated moneys in excess of his share. The accounts were brought down and settled to December 31, 1871. It was determined that B., a co-executor, was liable individually for so much of the moneys so appropriated by C. prior to August, 1867, as was in excess of the amount found payable to him on account of his share at the time of the accounting, but was not so liable for moneys which went into the hands of C. after August, 1867. *Held,* that B. was entitled to have applied in reduction of his liability the share of the estate to which C. was found entitled and which was payable December 31, 1871 ; and that a direction that the same should be applied in reduction of the indebtedness of C. incurred after August, 1867, was error.

But *held,* that B. was not entitled to have payments made by C. after August, 1867, credited in deduction of his liability ; that they were properly applied against the indebtedness of C. incurred after that date.

The executors were charged with the value of certain real estate which it was determined they had unlawfully disposed of. *Held,* that in ascertain-

ing C.'s interest in the estate he was entitled to a credit for his share of the sum so charged.

The accounting was not a final one, and it appeared that there was other property to be accounted for. The General Term modified the surrogate's decree by deducting from the amount ascertained, as remaining for distribution on December 31, 1871, costs and counsel fees incurred after that date, and the commissions of the executors thereafter fixed. *Held,* error; that the account in these respects was properly settled.

(Argued March 23, 1883 ; decided February 26, 1884.)

THESE were cross-appeals from different portions of judgment of the General Term of the Supreme Court, in the fourth judicial. department, entered upon an order made at the October Term, 1882, which affirmed in part and reversed in part a decree of the surrogate of the county of Livingston upon an accounting of the executors of the will of James S. Wadsworth, deceased.

The case is reported upon a former appeal in 74 N. Y. 539.

The facts so far as material are stated in the opinion.

*Wm. W. MacFarland* and *Wm. Henry Rawle* for appellants. The appeal should be heard and decided in the court on the evidence brought up according to the law and practice existing before the adoption of any part of the Code of Civil Procedure. (*Vanderheyden* v. *Reid,* 2 Hopk. 408 ; *Clayton* v. *Wardell,* 2 Bradf., introduction to 1st Bradford ; *Van Wyck* v. *Alley,* id. 522 ; *Schenck* v. *Dart,* 22 N. Y. 420 ; *Robinson* v *Raynor,* 28 id. 494 ; *Clapp* v. *Fullerton,* 34 id. 190 ; *Howland* v. *Taylor,* 53 id. 627 ; *Devin* v. *Patchin,* 26 id. 441.) This court always looks into the evidence to construe a finding and to see whether it has any basis in proof. (*Spencer* v. *Ballou,* 18 N. Y. 333 ; *Finch* v. *Parker,* 49 id. 8 ; 57 id. 642.) The court erred in rejecting the admission of the executors as evidence against them. (3 Greenl. Ev., §§ 277, 282, 284 ; Daniel Ch. Pr. [3d ed.] 778, 779 and notes ; 1 Greenl. Ev., § 194 ; *Duchess of Kingston's Case* and notes, 2 Smith's L. C. 424 ; *Robinson* v. *Smith,* 3 Paige, 222 ; *Bacon* v. *Robinson,* 18 How. [U. S.] 485 ; *Hubbell* v. *Meigs,* 50 N. Y. 482 ; 54 Penn.

St. 164; Story's Eq., § 1275.) If a trustee omits to sell, and mortgages, he is liable for depreciation generally, on the basis of duty to sell when the best sale could have been made. (Story's Eq., § 1061 a; *Devaynes* v. *Robinson*, 24 Beav. 86; Stephens' Dig. of the Laws of Ev., 99; *Amory* v. *Delamirie*, 1 Smith's L. C. 357; *Cotheal* v. *Talmage*, 1 E. D. Smith, 673.) Intrinsic value is not only a proper subject of inquiry in every case relating to real or personal property, but it is absolutely, in every conceivable case, the first and most essential inquiry. (*Clark* v. *Baird*, 9 N. Y. 188, 189, 194; *Harris* v. *Panama R. R. Co.*, 58 id. 660; *Scattergood* v. *Wood*, 14 Hun, 269; *Clark* v. *Baird*, 9 N. Y. 183; Greenl. Ev. Ch., 3 Starkie Ev. Ch. 1; 1 Greenl. Ev., § 84.) The inquiry must be limited to the market value at or about the time of the conversion, and the market value at or about the situs of the property. (Sedgwick on Damages [6th ed.], 279; *Gregory* v. *McDowell*, 5 Wend. 435; *Dana* v. *Fielder*, 2 Kern. 40; *Dunet* v. *Burton*, 47 N. Y. 175; 2 Lans. 137; *Worther* v. *Wilmot*, 30 Vt. 533; *Smith* v. *Griffiths*, 3 Hill, 536; *Havemeyer* v. *Cunningham*, 35 Barb. 515; *Blydenburgh* v. *Welsh*, 1 Bald. 340; *Cox* v. *Ebeland*, 65 Penn. St. 221.) Where the rule of damages is not the consideration paid, but the value of the premises at the time of the conveyance, the consideration expressed in the deed is evidence of such value. (1 Sedg. on Measure of Damages [7th ed.], 241; *Britton* v. *Stanley*, 4 Whart. 120; *Godwin* v. *Francis*, L. R., 5 Com. Pleas, 307; 1 Greenl. on Ev. [13th ed.], § 26, p. 54, n. 6; Wayne on Damages [3d ed.], 174.) The executors being the accounting party, and *prima facie* chargeable with the highest value of which there is any evidence, must not even leave the evidence as between the auditor's finding and the surrogate's evenly balanced, if they do, the former must prevail. (6 Paige, 583; 4 Edw. Ch. 32.) The exclusion of the answer, and the testimony of the witnesses in the equity case between the New Boston Company and the Pottsville Company was error. (Taylor's Ev., §§ 539–541, 681, 684; Stephen's Dig. of Law and Ev., art. 17.)

*J. B. Adams* for Charles W. Wadsworth. The provisions of the chapter " of title to real property by descent," 1 R. S. page 754, sections 23–26, inclusive, apply only to cases of " intestacy." (*Thompson* v. *Carmichael*, 3 Sandf. Ch. 120; *Camp* v. *Camp*, 25 N. Y. S. C. 217.) In America an advancement, in order to be reckoned toward the distributive share of the child, must have been so intended by the father, and so understood by the child, or at least the former must clearly appear. (3 Redfield in his Law of Wills, p. 429.) The mere proof of the entries in the books of the testator of the items of account against Charles F. are not alone sufficient to establish the fact of an advancement. (*Marsh* v. *Brown*, 25 N. Y. S. C. 319.) The maintaining or educating, or the giving of money to a child, without a view to a portion or settlement, shall not be deemed an advancement within the meaning of 2 R. S., p. 98, § 78. (*Taylor* v. *Taylor*, 20 Eng. Eq. C. 155.)

*Joseph H. Choate* for Martin Brimmer, executor, etc. The appeal is necessarily governed by the Code of Civil Procedure, and the court has no power to review the question of fact as to the value of the coal lands and which arises upon conflicting evidence. (Code of Civil Procedure, § 3356; in the matter of Ross, 87 N. Y. 514; *Davis* v. *Clark*, id. 623; *Marx* v. *McGlynn*, 88 id. 369; *Hynes* v. *McDermott*, 91 id. 451.) The auditor's action in the matter was purely advisory. (*Estate of McEvoy*, 1 Monthly Law Bull. 64; Redfield on Surrogates, 670; 2 R. S. 94, § 64; *Westervelt* v. *Greig*, 1 Barb. Ch. 469.) The auditor erred in rejecting the testimony of the witnesses offered by the executor as to the value of the coal lands, they having dealt largely in such lands, although not residents of the neighborhood, being competent as experts. (*Smith* v. *Gugerty*, 4 Barb. 614, 625; *Hawes* v. *Ins. Co.*, 2 Curt. 229, 230; *Kearn* v. *Ins. Co.*, 40 Mo. 19, 26; *McCullum* v. *Seward*, 62 N. Y. 316; *Keershaw* v. *Wright*, 115 Mass. 361, 366; *Miller* v. *Smith*, 103 id. 470, 475; *Brill* v. *Flagler*, 23 Wend. 354; *Alfonzo* v. *U. S.*, 2 Story, 421, 426; *Swan* v. *County of Middlesex*, 101 Mass. 173, 177; *Cantling* v. *R. R. Co.*, 54

Mo. 385, 391; *Clark* v. *Bond,* 9 N. Y. 188; *Lawton* v. *Chase,*
108 Mass. 238; *Brady* v. *Brady,* 8 Gray, 111; *Beecher* v.
*Dewston,* 13 id. 354; *Cornell* v. *Olean,* 105 Mass. 435; *Dra-
per* v. *Saxton,* 118 id. 427; *Miller* v. *Smith,* 112 id. 470;
*Buell* v. *Flagler,* 23 Wend. 354; *Teerpenny* v. *Ins. Co.,* 43
N. Y. 279; *Vandine* v. *Burpee,* 13 Metc. 288, 291; *Miller*
v. *Smith,* 112 Mass. 475.) A consideration stated in a deed,
in the absence of all evidence, is presumed, *prima facie,* to be
the actual consideration, but it is always open to parties to
show what the actual consideration was, and when that has
once been shown the consideration in the deed, and every pre-
sumption that rested on it entirely disappears from the case.
(*Upson* v. *Badeau,* 3 Bradf. 13; *Maine* v. *Haight,* 14 Barb.
76; *Stackpole* v. *Robbins,* 47 id. 212; *Wheeler* v. *Billings,*
38 N. Y. 263; *Murray* v. *Smith,* 1 Duer, 412; *McCrea* v.
*Purmort,* 16 Wend. 460; *Witdeck* v. *Waine,* 16 N. Y. 538;
*Adams* v. *Hull,* 2 Denio, 306.) For their indemnity against
their liability for indebtedness to Charles the executors may
look to his ultimate share of the principal and income of the
estate, and upon the same principle they may look to it as fast
as it is received, and to every thing that is received from him
and not otherwise applied. (*Devaneys* v. *Noble,* 1 Merivale,
608; *Jackson* v. *Johnson,* 74 N. Y. 607; 2 Hun, 500; *Webb*
v. *Dickinson,* 2 Wend. 64; *Allen* v. *Culver,* 3 Denio, 284;
*Truscott* v. *King,* 6 N. Y. 147; *Coleman* v. *Lansing,* 55
Barb. 54.)

RAPALLO, J. In order to ascertain what questions are open
on this appeal, it is necessary to refer to the proceedings had
prior to the former appeal to this court, and to state what was
decided on that appeal. Many of the questions of fact and
law involved in the case were then finally determined, and be-
came *res judicata,* not open for further review.

In December, 1871, the then surviving executors presented
their petition to the surrogate of Livingston county for a
settlement of their accounts. They filed with the surrogate
their accounts to December 31, 1871. These accounts were

referred to the Hon. Addison Gardiner as auditor, and on the 24th of September, 1876, the surrogate, on the report of the auditor, made a decree finally settling the accounts to December 31, 1871. By the accounts as thus settled, the executors were charged with the amount of the inventory and increase and other receipts, and credited with their payments to creditors and legatees, and for expenses up to that date, leaving a balance in their hands for distribution subject to the payment of their commissions and expenses.

From this decree of the surrogate an appeal was taken to the General Term of the Supreme Court, by Mrs. Adair and Mrs. Rogers, two daughters of the testator, and their respective husbands. No appeal was taken by any other party to the accounting.

The decree was affirmed at General Term, the court adopting the opinion of the auditor, and the contestants thereupon took a further appeal to this court. The grounds of that appeal were, that the auditor and surrogate had erred in the manner of ascertaining the amount with which the executors should be charged for the value of certain coal lands in Pennsylvania which they had disposed of in October, 1864, in a manner not authorized by law. Also that the executors had been erroneously credited with certain specified items of the account, and that they had not been charged with a sufficient sum by reason of advances made to C. F. Wadsworth, one of the executors, and sums which he had been suffered to draw from the funds of the estate and for which it was claimed that his co-executors should have been held individually liable. These different questions were raised by exceptions to the auditor's report and the decision of the surrogate, and were specifically passed upon by this court, some of the exceptions being sustained and others overruled. The executor's account was not re-opened, but was remanded to the surrogate of Livingston county for the sole purpose of being re-adjusted in conformity with the opinion of this court which opinion was inserted in and formed part of the remittitur.

The accounts, as settled by the surrogate, were not disturbed

except as to the specified items, and in so far as any change in those items should render a re-adjustment necessary to make the residue of the account conform to the changes thus made. The facts found by the surrogate were not subjected to re-examination, except in respect to the amount found by his decree as the value of the coal lands, and perhaps some trifling amounts of payments for interest and exchange. All the other changes in the accounts directed by this court depended on questions of law, and the accounts as settled stood, except as thus modified. The only matter of fact referred back to the surrogate for re-examination was the amount chargeable to the executors on account of the coal lands.

In pursuance of the judgment of this court, which was made the judgment of the Supreme Court, the executor's account appears to have been re-adjusted by the surrogate in substantial conformity with the directions contained in the opinion and remittitur. The principal question litigated before him was the amount which could have been realized from the coal lands. This question was tried before the auditor, who made his report finding that the amount, justly chargeable to the executors for these lands, was $132,825 as of October 10, 1864, with interest from that date. The surrogate, after reviewing this report and the evidence before the auditor, made his final decree dated March 6, 1882, whereby he reduced this estimate to $66,412.50 and interest and made a decree settling the accounts of the executors on that basis, and in other respects modifying the accounts as directed in the opinion and remittitur from this court. From that decree an appeal was taken to the General Term of the Supreme Court by Mrs. Adair and Mrs. Rogers and their husbands, respectively. No appeal was taken by any other party. The court at General Term affirmed the decree of the surrogate in respect to the amount chargeable for the coal lands, but modified it in various other respects, which will be considered in connection with the appeal of the executors, now before us.

Mr. and Mrs. Adair and Mr. and Mrs. Rogers now appeal to this court from so much of the judgment of the General

Term as affirms that part of the decree of the surrogate which adjudges the amount chargeable to the executors for the testators' interest in the coal lands, claiming that the amount should be increased. Mr. Brimmer, one of the surviving executors, appeals from those parts of the judgment of the General Term which modify the decree of the surrogate in the respects stated in his notice of appeal to this court, and Mr. Brimmer and Charles F. Wadsworth, the other surviving executors, appeal from so much of the judgment as adjudges that the several sums received by Charles F. Wadsworth from his father in his life-time, were not gifts, but constituted a debt due from him, and that interest is chargeable to him thereon.

We are of opinion that none of the questions presented by the appeals of Mr. Brimmer and Mr. C. F. Wadsworth in relation to the indebtedness of Mr. Wadsworth for money received by him from his father in his life-time, can be raised on this appeal. On the original counting, Mr. Charles F. Wadsworth was charged with two sums, one of $50,000, and one of $14,710.92, as debts due from him to the testator at the time of his death. These debts had been included in the inventory filed by the executors, and on the settlement of their account were charged to them as part of the estate of the testator which had come to their hands. But the same amounts were credited back to them in their account as executors, as remaining uncollected.

On the former appeal no question was raised as to the fact of the existence of these debts. They were admitted by C. F. Wadsworth in his testimony, and included by him and Mr. Brimmer in the inventory, and no appeal was taken by either from the adjudication which established them. But on the appeal of Mrs. Adair and Mrs. Rogers to this court, it was adjudged that they were improperly credited back to the executors as uncollected, and should remain in the account, as assets of the estate in the hands of C. F. Wadsworth, and necessary ingredients in ascertaining the total amount of the estate and the amount of each distributive share, independently of the question of the personal liability of the executors as between

themselves to the legatees, which question was separately dis-
posed of. When the account was remanded to the surrogate
by this court he conformed to its decision in that respect and
left this indebtedness of C. F. Wadsworth of $64,710.92 in
the account as settled by the auditor, and charged it to C. F.
Wadsworth in reduction of his distributive share of the estate
of his father. Neither Mr. Brimmer nor Mr. C. F. Wads-
worth appealed from this decree to the General Term, and in
so far as the decree affirmed the existence of the debt, the ad-
judication of the surrogate became conclusive as to them.
But, moreover, they could not have litigated it on the second
hearing before the surrogate, because it had been finally passed
upon and was not referred back to the surrogate for re-exami-
nation or correction. The only duty the surrogate had to per-
form, under the decision of this court, was to apply the debt in
reduction of the amount to be credited to C. F. Wadsworth
for his share of the estate. Mr. Wadsworth and Mr. Brimmer
now contend that the testimony on the second hearing before
the auditor and surrogate disclosed that the two sums of
$50,000 and $14,710.92 were not in fact debts of C. F. Wads-
worth, but were gifts to him. For the reasons above stated,
we are of opinion that this was not an open question, but had
finally been disposed of.

The appeal of C. F. Wadsworth cannot, therefore, be sus-
tained. Mr. Brimmer's appeal from other parts of the judg-
ment of the General Term must next be considered.

It appeared on the former appeal that Charles F. Wadsworth,
one of the executors, had received funds of the estate largely
in excess of his share thereof, and that he was insolvent,
whereby a loss had been sustained by the estate. On the hear-
ing before Judge GARDINER, as auditor, the accounts rendered
by the executors, which were brought down to December 31,
1871, and not later, were excepted to by the contestants on
various grounds, one of the exceptions being that the executors
should be charged with all the payments, and lawful interest
thereon, made to the legatees and devisees, Charles F. Wads-
worth and Craig W. Wadsworth, or either of them, in excess

of what said legatees and devisees were respectively entitled to receive under the will of the testator. This was the extent of the claim then made by the contestants.

After a full investigation of the facts in respect to the advances in question, it was determined by the auditor that the advances made to C. F. Wadsworth up to August, 1867, were made by the executors on the credit of his one-sixth of the estate, and that his co-executors, having acquiesced in them, were ultimately responsible to the other beneficiaries to make them good, if the interest of the debtor in the estate was insufficient for that purpose, but that for the money which went into his hands after that date, to his appropriation of which they had not consented, they were not responsible. This disposition of the matter was confirmed by the surrogate. But in the final decree, which was affirmed at General Term, all the advances to Charles F. Wadsworth were credited to the executors as uncollected assets and were charged to C. F. Wadsworth individually, on the assumption, doubtless, that the interest of Charles in the real estate, to be thereafter partitioned, would be sufficient to provide for the debt of $64,710.92, due by him to the testators in his life-time, and also for that portion of the further advances which had been made with the concurrence of the executors prior to August 26, 1867, and which the auditor decided that they were ultimately liable to make good, if his interest in the estate should prove insufficient.

On the appeal to this court the principle adopted by the auditor, and his decision that the co-executors were personally liable only for the funds received by C. F. Wadsworth prior to August 26, 1867, was affirmed, but it was held that the executors should be credited only with the distributive share to which Charles F. Wadsworth appeared to be entitled at the date to which the accounts were brought down (December 31, 1871) and that the executors were liable to account, as of that date, for all sums paid over by them, or by their authority, to their co-executor in excess of the amount then due him in his own right, and that this excess could not be applied in antici-

pation of the value of his share of the real estate on a future partition thereof.

Accordingly we directed that for so much of the indebtedness of Charles, existing at the departure of Mr. Brimmer for Europe, in August, 1867, as was in excess of the amount found payable to Charles on account of his share at the time of the accounting, December 31, 1871, Mr. Brimmer should be held liable with the other executors, as of that date, and that in ascertaining the share of Charles, the amount due from him to the testator at the time of his death ($64,710.92), with interest, should be first applied towards the extinguishment of his distributive share.

This matter was thus finally disposed of on the former appeal to this court, and in conformity with its decision the surrogate confirmed the report of the auditor appointed by him, which report stated the account, with the proper allowances of interest, to produce exact equality among all the legatees. In this statement of the account Charles F. Wadsworth was charged with all moneys received by him, with interest to August 26, 1867, and was credited with all payments, with interest to the same date. The balance represented the amount due from Charles for advances to August 26, 1867, and on that balance he was charged with interest to December 31, 1871, the date to which the whole accounting was brought down, and at which the share of the estate payable to him was ascertained. The indebtedness from him to the testator of $64,710.92, with interest to December 31, 1871, was then deducted from his share of the estate, and the balance credited to Mr. Brimmer against the sum for which he was liable for advances to Charles. The residue represents the amount of Mr. Brimmer's personal liability to the estate, to the 31st of December, 1871, for moneys received by C. F. Wadsworth.

On the appeal to the General Term, the Supreme Court modified the decree of the surrogate in so far as it allowed the balance of C. F. Wadsworth's share of the estate, payable December 31, 1871, to be applied in reduction of Mr. Brimmer's liability, and charged him with the full amount of the

advances to Charles up to August 26, 1867, holding that the balance due to December 31, 1871, on Charles' share should be applied to his indebtedness to the estate incurred after August, 1867, and for which it had been adjudged that Mr. Brimmer was not liable. · Mr. Brimmer now appeals from this modification, and we think that this part of his appeal is well taken. The surrogate was right in conforming to the decision of this court, and we do not now see any reason for changing the conclusion we then reached. If it had been found on the settlement of the account to December 31, 1871, that the amount drawn by Charles F. Wadsworth was only equal to the amount then payable to him out of the estate, it is clear that one account would have squared the other, and no liability would have rested upon .the co-executors. The excess of his drafts beyond his share was the only subject of dispute. For a part of this excess, viz., that which had accrued prior to August 26, 1867, the co-executors were held personally liable, but for the residue, viz., that which accrued after August 26, 1867, they were adjudged not liable. As to that part of his excessive drafts, C. F. Wadsworth alone was liable, and if he was unable to respond, the loss necessarily fell upon the estate. The co-executors were held justified in allowing him to receive and retain funds of the estate up to the amount of his individual interest in the estate, and their liability did not begin until he had exceeded that amount. But if the decision of the General Term were adopted, and the amount of his interest in the estate should be applied to the debt incurred by him after August 26, 1867, it is obvious that the result would be ·to make the co-executors liable for a part of his indebtedness for which it had been expressly decided that they were not responsible. It is. too obvious to require discussion that in ascertaining Charles' interest in the estate he should be credited with the same share of the amount charged to the executors as of October, 1864, for the coal lands, as is credited to the other beneficiaries. On this branch of the case the appeal of Mr. Brimmer should be sustained.

The court at General Term further modified the surrogate's

decree by deducting from the amount ascertained as remaining for distribution on the 31st of December, 1871, costs and counsel fees incurred after that date, and the commissions of the executors thereafter fixed. The accounting was not a final one, but only of receipts and disbursements up to December 31, 1871. It appears that there is other property to be subsequently accounted for, and we think the surrogate properly settled the account in that respect, and also in respect to the payments made by Charles to the estate after August 26, 1867. Mr. Brimmer now claims that these payments should be credited in reduction of his liability for advances made prior to August, 1867. We think they were properly applied against the receipts of Charles after that date, for which he was solely responsible.

The only remaining question is the appeal of the contestants from so much of the judgment of the General Term as affirms the decree of the surrogate in respect to the amount to be charged to the executors for the coal lands. The determination of this question has rendered necessary an examination of the testimony taken before the auditor, which is very voluminous, and of the elaborate briefs of counsel, in which the numerous questions of fact involved are discussed with great thoroughness and elaboration. All the judges who take part in the decision have made this examination, which has unavoidably consumed much time and labor and caused considerable delay in the decision of the cause. We have carefully weighed and considered the arguments of the respective parties upon the facts, and the views presented in the opinions of the auditor and the surrogate and General Term, and although differences of opinion have arisen among us as to the amount with which the executors should be charged in respect to the coal lands, a majority of the court have finally concluded that the decree of the surrogate and the judgment of the General Term settling the amount to be charged for these coal lands should be affirmed.

This result leads to the conclusion upon the whole case, that the judgment of the General Term, in so far as it reverses or modifies the decree of the surrogate, should be reversed, and

the decree of the surrogate should be in all respects affirmed, and that the costs of the contestants and of Martin Brimmer, one of the executors, at General Term, and in this court, should be paid out of the estate.

All concur.

Judgment accordingly.